Next up, we have United States v. Richardson, and we will wait to start that until after everybody has had a chance to clear the courtroom who wishes to do so and counsel have had the opportunity to do so, and we will wait until after everybody has had a chance to do so.  Our next case is United States v. Richardson, and for those of you who may have thought you've heard this already, you're correct. I jumped the gun a little bit. It's actually this case that we have the order sealing the condition, the medical condition of the defendant, so just a reminder to the parties that we will not be mentioning that All right, and we will begin with Ms. Brin. Brenda Brin Good morning, and may it please the Court, Brenda Brin with the Federal Defender's Office on behalf of Mr. Richardson. I'd like to focus this morning on the two issues I've raised that go to the 924C counts. That's Issue 1, the jurisdictional challenge to those counts after Taylor, and Issue 3, regarding the sufficiency of the firearm. I will rely on my briefs as to Issues 2 and 4 unless the Court has any specific questions. Starting with Issue 1, the government concedes that Taylor abrogated the realistic probability analysis in St. Hubert, but it argues that doesn't matter because Inres sent Fleur, did not use that analysis, and they say Fleur is the relevant precedent, and it still binds this Court. That's wrong. Can I ask you just, here are the problems that I think I have with your argument on this score, and you can tell me where I'm wrong. So Fleur does say, with respect, you know, sort of with or without respect to a reasonable probability analysis, that Hobsack robbery, completed Hobsack robbery is a crime. Right? Taylor, as I read it, then brackets the completed Hobsack robbery issue. It says some version of whatever may be said about completed Hobsack robbery, dot, dot, dot, attempted Hobsack robbery doesn't cut the mustard. Then, in Wiley, post-Taylor, we say Taylor did not disturb our holding that completed Hobsack robbery is a crime of violence. I just don't see how you can navigate those three cases. Okay. Let me address that. The Court, in Taylor, the Supreme Court, was not faced with any challenge to completed Hobsack robbery. The defendant in that case was not charged with it. So what you have just cited, whatever completed Hobsack robbery may require, I mean, that's just leaving the issue open. All I mean to say is that Taylor, by its own terms, brackets the issue. It doesn't address the issue one way or the other. And it seems like your argument is Taylor sort of implicitly addresses the issue. No. And I'm just saying I really don't think it does. I don't. That's actually not my argument. So let me clarify it. In the course of rejecting the government's position about attempted Hobsack robbery in Taylor, the Supreme Court definitively rejected its argument that the Duaneis Alvarez construct, the realistic probability analysis, works for 924C. They rejected it. They said, you can't use that. We don't require a case. Maybe for other statutes when we're dealing with state offenses, but not for 924C. That was the basis of this Court's holding in St. Hubert that Hobsack robbery categorically qualified as a crime of violence. Now, it is true that in St. Fleur, the panel on an SOS application said Hobsack robbery is a crime of violence, did not use the words categorical approach, and in fact, St. Fleur did not use the categorical approach. The St. Fleur panel merely cited the language of an alternatively phrased disjunctive statute and said, well, that proves it's a crime of violence. By the time of St. Hubert, the Court, which was comprised of two of the judges that were on St. Fleur, understood that was problematic under the categorical approach. Why? Because Mathis— Can I ask you about St. Hubert? Yes. So the relevant section of St. Hubert seems to be section 3C of the opinion, and it's short. It essentially says—I won't read it all to you, although I could because it's really short—it essentially says we held in Cologne and St. Fleur that completed Hobsack robbery as a crime of violence, and we are bound by that, and just because it's an SOS order doesn't mean that we're not, and so accordingly, it's a crime of violence here. Your Honor, with due respect, I don't believe that is the relevant portion of St. Hubert here. The relevant portion that has undercut this whole analysis in the circuit on Hobsack robbery is the portion of St. Hubert where they say, well, we understand that in St. Fleur, and it's true, we didn't consider Descamps, Mathis, Lockett, any of these categorical approach precedents. We have to apply the categorical approach, so we're going to do it ourselves. The court says those precedents are relevant. That is super important. I know you think that's the relevant portion of St. Hubert. I understand what you're saying. I understand the argument. Let me just read, because I think this is vitally important, the opening paragraph of the section I just cited, and just so we're all on the same page, it's at pinpoint site 345 of the relevant opinion. Even assuming that DeMaia and Johnson invalidated C-3B, the risk of force clause, as unconstitutionally vague, we conclude St. Hubert's challenge to his first section 924C conviction fails because this court already held that Hobsack robbery, the predicate for count eight, independently qualifies as a crime of violence under section 924C3A's use of force clause. C, In re Fleur, C, Cologne. Accordingly, as an independent and alternative ground for affirmance, we hold that St. Hubert's Hobsack robbery qualifies as a crime of violence under the use of force clause, and thus affirm. Your Honor, I disagree that that ended the analysis, because then we didn't need the whole rest of the opinion in St. Hubert where the court surveyed all of the decisions of other circuits and followed the second circuit on realistic probability to come up with the end, saying now we're applying the categorical approach, which clearly wasn't applied in St. Fleur, and we get to the same spot. So yes, it remains binding. An SOS opinion cannot be appealed, and the court did say in St. Hubert that it's binding on future panels. But the only exception is if it's been abrogated by an intervening Supreme Court case. It has been abrogated by Mathis. The court considered Mathis and didn't think it did in St. Hubert, but now we know from Taylor that this whole categorical approach analysis that the court did was wrong. So that's just, like, wiped out of St. Hubert. So, Wiley, thank you. I'm sorry I didn't get to address your argument, Judge Newsom. The prior panel precedent rule here has been clarified by the Jackson decision last year, and the court explained that issues that are not raised by the parties or addressed by the court, considered by the court, are not binding on future panels. Now, this whole aspect of Taylor, the whole discussion of Duenas-Alvarez that I am relying on, this wasn't briefed in Wiley. Wiley was challenging a different portion of Taylor. So the same way that the defendant in Jackson was not bound by Smith because he was challenging a different portion of the statute, the defendant or the appellant in Wiley was, you know, trying to use a different portion of Taylor. Can I ask you about that, counsel? Yes. So the part of Jackson that you cited focused on, I think you quoted it almost identically, it deals with issues. But we've also said as part of the prior panel precedent rule that overlooked arguments are not, those are not exceptions to the prior panel precedent rule. In other words, you can't just come up with a new argument on that issue. And so it seems to me the key distinction between those things are issues and arguments. And I'm getting to my question, I promise. So it seems to be the issue here is, broadly, did Taylor abrogate our prior panel precedents regarding Flohr and St. Hubert? The arguments in support of those things are the argument you're making here, which is it was the reasonable probability test that was abrogated in Wiley. It was another part that called it into question. But the issue was, seemed to be considered in Wiley, which is, did Taylor abrogate? And I think Judge Newsom read correctly Wiley to you, which is Taylor does not abrogate. I actually, I think if you look at the briefing in Wiley, the issue was not presented that way. The defendant was trying to analogize aiding and abetting to attempted Hobbs Act robbery and was relying on a different portion. I know the argument was different, but that goes to the prior panel precedent rule why overlooked arguments are not an exception to the rule. The question is, the issue seems to be, did Taylor abrogate? The underlying arguments are, one, attempted robbery is just like completed robbery and Taylor abrogated that. Or two, Taylor abrogated the reasonable probability rule and St. Hubert relied on that, and so that did it. But the overall issue is the same issue. Did Taylor abrogate? And we seem to have held that it did not, right? I'm sorry. I disagree with you that that is the issue, and we did not hold that Taylor did not abrogate. That was not an issue for consideration in Wiley. I see that my time is up. I will just say on issue three as I sit down that there is no case involving as little evidence as this one to support the finding of a federally cognizable firearm for 924C. Thank you, Ms. Brin. You've reserved five minutes, and we'll hear from Mr. Delgado. Good morning, Your Honors, and may it please the Court, George Delgado on behalf of the United States. Whether completed Hobbs Act robbery is a crime of violence under 924C3A is a settled issue in this circuit, and Taylor has not revived that issue. It was decided in Fleur, which has since been cited as the prior panel president in many cases afterwards, including in St. Hubert. And as Judge Luck correctly noted, the main thrust of the St. Hubert opinion was first relying on Fleur as a prior panel president, even though it later on went to give additional rationale for holding that completed Hobbs Act robbery is a crime of violence. I would also invite the Court to look at footnote nine of the St. Hubert opinion, which has specifically addressed the cases, later Supreme Court cases, such as Moncrief, the scams and methods, which have spoken and clarified the categorical approach. Somewhat. And it specifically said that those cases are not directly on point either because they dealt with separate issues and they would not abrogate the prior panel president rule. And certainly that issue has been made clear in the United States versus Wiley decision that we filed a supplemental authority, even though that case dealt with aiding and abetting Hobbs Act robbery. Aiding and abetting is not a separate federal crime, as the opinion says. It's just a way of extending liability from the principle. And the case said in no uncertain terms that Taylor did not abrogate the holding that completed Hobbs Act robbery is a crime of violence, something which my learned friend has admitted to, that the Taylor decision did not deal with completed Hobbs Act robbery at all. If that is the case, then I cannot serve to overcome the prior panel president rule. As Judge Luck noted, there is a difference in the rule in Jackson, which states that if you have a case that does not address a particular issue, then that case cannot be considered to have any presidential value on that issue going forward. That is different here where the Jackson is being used for the proposition essentially to try to do away with the overlooked reasons rule that we say that we still adhere to a prior panel president, even though we don't overturn it based on any new arguments that may be come up with any sort of overlooked reason. If the panel has no other questions on this issue, since not much time was devoted as to issue three, then I would just say – Why don't you talk about issue three? Sure. So on issue three is – The argument, as I understand from your opposing counsel, is there really isn't a lot of evidence here on whether this was a firearm with regard to the 924C counts. I'll put aside the felon of possession count because I think the picture probably changes that a little bit. But at least on the day of, all we really have, as I understand it, are the victim's testimony that this appeared or looked like a firearm, number one. Number two, these pictures going back to a few days before and then a few months before that we know of where he had a firearm that's there and sort of the inference that that firearm has to be the same firearm that was used there, and thus it's a real firearm. Am I missing something? No, not at all. Why is that sufficient? Well, under the 11th Circuit, this court has made clear in several cases – Woodruff, Hunt, and King, for example – that the government can prove that a firearm was used within the statutory definition just based on lay testimony. The government doesn't have to produce an expert, nor do they have to actually produce the gun in question. Lay testimony is enough, particularly where you have, in this case, victims, and I would invite the court to look at the Woodruff decision as a decision that the government would submit had even less evidence than the case here. There was a case where a person robbed several victims at gunpoint. The gun was pointed directly at their face, a fact that the court found salient in finding credible the fact that— There's no doubt that if the victim had said, that was a gun, and when confronted, are you sure it was a real gun? Yes, that was a gun, that that would be sufficient. I don't think that's what opposing counsel is saying. What I understand opposing counsel to be saying is the testimony here was a little more hedging than that. It was, it appeared to be or I believe to be a gun, and then when confronted on cross-examination, I think at least one of the victims sort of expressed, wasn't 100% sure, wasn't an expert on guns, but said that it looked like or appeared to be a real gun. Is that sufficient as opposed to the sort of the first line or the cases that you've cited where a layperson or someone else says, a gun was pointed at me and that was a gun? So the victims did say that it appeared to be a real gun. However, at least the first victim, when confronted on this issue, said that they would know a real gun when it was pointed at their face. During the trial, the first victim was shown a series of photographs which showed real guns and then one fake one. So he admitted that he's not an expert in guns, but he said if a gun is pointed at my face, I can tell if it's true. An interesting point is regarding the second victim, who gave a little bit more detail about the gun, saying that it was made out of iron or steel, whatever it's made out of. There was no cross-examination on that issue. The other point here is why we know that it's a real gun is when we are on appeal, right, the issue is whether a reasonable jury, there's sufficient evidence to show that a reasonable fact finder would find that this is an actual firearm. And in this case, you had photographs only two days before the first robbery in which the perpetrator is taking a selfie of himself with a gun in his waist. There is no evidence that he owned any other type of gun. And this occurred only two days before the robbery. Do you agree there is no evidence from the victims that that gun looked like the gun or was the gun that was used on the day of the robberies, right? The victim's testimony, the way that they described the gun is consistent with the weight of the gun. But no one showed them the picture and said, is that the gun, and they said, yeah, that was it. That is correct. That didn't happen. That did not happen. But it is a reasonable inference. I know my learned friend in the briefs called it an inferential leap. It's but a step. He takes a picture with a gun, the only gun that there is evidence that he owns, mere two days before the robbery. He commits the first robbery. The first victim describes the gun in similar ways. Then he commits a crime about a week later, the first one being on June 19th, the second one being on June 25th. The second victim also describes the gun in similar ways. Then the government produces an expert, the president of High Point Firearms, who identifies the particular gun. No, there is no surveillance video of this occurring, nor are these victims experts in the guns. And it does take an inferential step to go from the picture to the gun. But the government would submit to the robberies. But the government would submit that on the standard of review before the court, which is just, is there sufficient evidence to show that a reasonable fact finder would have found this to be a firearm, that the evidence is sufficient. And if the court has no other questions, the government rests on its briefs on the remaining issues and respectfully requests that the court affirm the convictions against Nigel Richardson. Thank you. Thank you, Mr. Delgado. Ms. Bryn. I'll address the issues in reverse order, starting with the sufficiency. Your Honor, the government cited five 11th Circuit cases in its brief. None of them are like this case. The evidence here is less. In all of those cases, there was either a surveillance video, pictures from the surveillance video, stills taken from the surveillance video, a witness familiar with firearms, such as a law enforcement officer, or even a bank employee that one could infer might be trained or familiar with guns. All of the robberies in these cases occurred during daylight. This one occurred, and I'll quote the prosecutor at trial, he kept saying it, in the dead of night, in the dead of night. These witnesses, neither witness could identify this gun. The first witness couldn't even identify this defendant. He couldn't pick him out of a lineup. And the fact that the second witness said that this, whatever was pointed in his face, looked like a gun because it was metal, well, airsoft guns can be made of metal. You can Google it. I mean, it's public information. They are designed to look exactly like real guns. The difference is not how the gun looks. It's in how the mechanism works. It's, you know, air compression versus an explosion. So there's no way that a lay witness would know that, and there is evidence on this record about airsoft guns. The first witness, Mr. Pierce, was shown a picture of an airsoft gun, and he said that resembles the gun that was shown me. Second of all, this defendant certainly knows about airsoft guns, that they can fool people, and he was the only prior crime involved, he said, in airsoft guns. Can I ask you a couple hypotheticals? Yes. They'll be quick, I promise. So we've said lay testimony in other contexts, drunkenness, speeding is sufficient. In other words, people can tell if someone's going too fast or someone's inebriated. If the testimony, assuming that was the relevant issue at a trial, if the testimony was, I saw Joe Smith that day, and he really looked drunk, would that be sufficient to show that he was inebriated? And if it was a speeding trial or something where that was the relevant part? It was like if someone said, I was standing on the side of the road, the speed limit was 30, and it sure looked like he was going 50. Would that not be sufficient? Yes, I think those things are within common knowledge. I don't think whether something that looks like a gun meets the federal definition of firearm is within common knowledge. It wasn't within my knowledge. Having said that, it is subject to lay testimony. Yes, but not all lay testimony. At a certain point, the court has to say, we need more. That is not a sufficient inference. And I will point you to several cases of this court that have found insufficient evidence where the defendant was involved in doing something illegal, like a burglary or a robbery. But the court did not find sufficient evidence to make that inferential step to another crime, a drug crime, a drug ripoff, or a robbery in which the defendant robbed a gun. That's U.S. v. Manuel Pedro from 1993, United States v. Charles, United States v. Martinez, and most importantly, United States v. Hamlin from 1990, which interestingly was reviewed for manifest injustice because the defendant didn't even make a Rule 29 motion at all in that case. And what the court found there is that the defendant drove, it was a 924C case, just like this. The defendant drove the getaway car. He was involved in the robbery of the bank, as an aider and abetter or whatever. But what they couldn't infer was that he knew that there would be a gun used in that robbery. It might be reasonable to think that you can't rob a bank without a gun, but the court would not make that inferential leap. And so the court reversed. He did something wrong, he did something illegal, but he didn't commit a 924C. And in closing, I will just quote Justice Gorsuch in Davis, which was also a 924C case, where Justice Gorsuch, writing for the court, said, in our republic, a speculative possibility that a man's conduct violated the law should never be enough to take his liberty. Here, speculation is taking 14 years of Mr. Richardson's liberty. And under the case law, the government has cited our cases less. No case holds that you can infer from a photo two days before that the defendant used that gun. No proof he owned it. That was a misstatement by the government. He could have taken a selfie with a friend's photo. You see on the day the pictures were taken, he's driving around with friends. Adds to the inference on the totality of the record here that, yes, he touched, he possessed, he held a gun on the 17th. I see my time is up. But no proof beyond a reasonable doubt that that gun was the gun used on the 17th or that that same gun in the picture on the 17th was used six days later in another robbery. Thank you. I ask the court to vacate the 924C and 922G1 convictions or at the very least remand for a new trial on the 922G1 count. Thank you. Thank you, counsel.